618 So.2d 312 (1993)
Susan PHILLIPS and David Alan Phillips, Appellants,
v.
Lorrie Lytton FICARRA, Appellee.
No. 91-3328.
District Court of Appeal of Florida, Fourth District.
May 5, 1993.
Rehearing Denied June 9, 1993.
*313 Scott J. Feder and Beth F. Bloom of Floyd, Pearson, Richman, Greer, Weil, Brumbaugh & Russomanno, P.A., and Paul M. Bunge, Law Office of Paul M. Bunge, Miami, for appellants.
Richard A. Sherman and Rosemary B. Wilder, Law Offices of Richard A. Sherman, P.A., and Michael A. Robb, Barnett, Clark & Barnard, Fort Lauderdale, for appellee.
WARNER, Judge.
In this appeal from a final judgment in favor of appellant but finding no permanent injury and awarding no damages appellant claims that the trial court erred in excluding the medical records of her treating physician, in allowing another doctor whom she had consulted after her treating physician's death to testify in violation of either the statutory privilege of section 455.241(2) or the discovery rules, and in failing to send back a critical MRI scan to the jury. We reverse as to two points raised.
Appellant was in an accident and felt pain in her back the day after. When it did not subside after two weeks, she was referred to Dr. Leone, an orthopedist. She visited him six times altogether. During her first visit, he did not take x-rays or refer her for an MRI scan because she was pregnant. However, he conducted other tests and recommended therapy. Although she continued to have back pain, her pregnancy prohibited her from further treatment.
After appellant gave birth, she returned to Dr. Leone who repeated the exam and took x-rays, scheduled an MRI, and ordered 22 visits of physical therapy. The doctor indicated that she had a herniated disc which would eventually get worse and need surgery. He offered no further treatment. Appellant scheduled one other visit about two months later but cancelled it when her pain subsided. Six months later she contacted Dr. Leone's office and was informed that he had died. Her attorney arranged for her to see Dr. Smith who had taken over Dr. Leone's patients. She visited Dr. Smith once but chose not to return to him because she did not think he was thorough in his exam. She was then referred to Dr. Beinhaker in August 1991 just before trial whom at trial she considered to be her treating physician.
Two experts testified for appellant. Dr. Kagan interpreted the MRI scan done by Dr. Leone, and Dr. Beinhaker testified as to appellant's current physical condition. He was allowed to testify that he relied on Dr. Leone's records in rendering his opinion but the trial court refused their admission. This was error. The parties had stipulated that the records custodian was not necessary. Therefore, the records were admissible as business records. Section 90.803(6), Fla. Stat.; Thunderbird Drive-In Theatre, Inc. v. Reed, 571 So.2d 1341, 1345 (Fla.4th DCA 1990), rev. denied, 577 So.2d 1328 (Fla. 1991); Brevard County v. Jacks, 238 So.2d 156, 158-59 (Fla.4th DCA 1970). Because they are used for medical treatment, such records are considered inherently trustworthy unless a challenge is made to their trustworthiness, which was not the case here. Thus, even though Dr. Leone was dead, his medical records could be introduced into evidence *314 by a records custodian under the business record exception to the hearsay rule. As the parties stipulated to waive the custodian's testimony, the records should have been admitted.
This cannot be considered harmless error in this case. Appellee's entire focus in this case was that appellant and her lawyer manufactured this case, and they point to the gaps in treatment by doctors. However, Dr. Leone's records reveal extensive physical therapy and other treatment. While appellant testified to much of this, the jury might well have accorded a much higher degree of credibility to the actual medical records. See Alford v. Meyer, 201 So.2d 489 (Fla.1st DCA 1967), cert. denied, 209 So.2d 671 (Fla. 1968). They were necessary to counter the charge that appellant was simply building a case.
Secondly, the trial court allowed Dr. Smith to testify as a defense witness. Appellant had been referred to Dr. Smith after Dr. Leone's death. She saw him once and then went to Dr. Beinhaker. When appellee's counsel became aware of Dr. Smith, he contacted the doctor and asked him to prepare a report on appellant's visit to him. Defense counsel also provided the MRI for Dr. Smith to review. Neither the parties, Dr. Smith, nor the trial court were able to articulate Dr. Smith's status. Appellant claimed at trial that Dr. Smith was an examining physician. Appellee claimed that he was a treating physician. If Dr. Smith were a treating physician, then defense counsel's ex parte communications with Dr. Smith would have violated section 455.241(2), Florida Statutes (1991), which prohibits communications between a doctor and a third party regarding the medical condition of the doctor's patient unless compelled by a subpoena for deposition, evidentiary hearing, or at trial. See West v. Branham, 576 So.2d 381 (Fla.4th DCA 1990), rev. dismissed, 583 So.2d 1034 (1991). However, there is no sanction specified in that section for a violation. (In West we considered a protective order which was entered to prevent a violation from occurring.) Thus, whether to strike the doctor's testimony when it appears that the statute has been violated must be left to the sound discretion of the trial judge. Consideration of the extent of the violation, its willfulness, and its degree of harm to the patient should be weighed. In the instant case, where the exact status of Dr. Smith was ambiguous and both appellant's attorney and the doctor himself did not consider him a treating physician, we cannot conclude that the trial court abused its discretion in refusing to strike Dr. Smith's testimony.[1]
With regard to the claim that Dr. Smith's testimony should have been disallowed because of violations of the pretrial order, we are governed by Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981), which leaves it to the exercise of the trial court's discretion when allowing witnesses not listed on the pretrial witness list to testify. Dr. Smith was known to the appellant prior to the trial as he had examined her, and appellant had listed his report as a potential exhibit at trial. We cannot say that the trial court abused his discretion under the circumstances.
Finally, appellant complains that the trial court erred in refusing to allow the MRI scans to go back to the jury during their deliberations. The MRI scans were used both in opening and closing arguments with many of the expert witnesses referring to the scans. In fact, on opening argument when the defense counsel objected to the appellant's counsel's use of the MRI blowups, the court commented that the exhibit was directed to jury and subject to being placed in evidence. At the close of the case the court advised the jury that it would "get the items that have been placed in evidence." Nevertheless, after the jury was excused the court noted that the "MRI's don't go back." Appellant objected, claiming that withholding the MRI scans served to cast doubt on the jury's mind upon their value as evidence after the *315 court told the jury that it would get all the evidence. The MRI scans constituted the only physical evidence of the nature and extent of appellant's injuries. While the trial court has considerable discretion in determining whether to allow evidence to go to the jury, we find that it is an abuse of discretion to fail to send this crucial evidentiary exhibit to the jury when the court has told the jury it would get all of the evidence. The inference to be drawn is that somehow this material exhibit is not to be considered evidence in the case. See Brantley v. Tampa General Hospital, 315 So.2d 233 (Fla.2d DCA 1975); see also Darley v. Marquee Enterprises, Inc., 565 So.2d 715, 719-720 (Fla.4th DCA 1990). That would be devastating to the appellant's position.
The last point for reversal deals with appellee's counsel's comments on the evidence in closing argument. Any errors as to all but one were not preserved by timely objection. As to the one comment on which objection was noted, we do not find harmful error.
Because of the failure to admit Dr. Leone's records as well as the failure to send the MRI scans back to the jury, we reverse and remand for a new trial. Therefore, we do not address the issue related to the failure to award damages.
The issues involved go solely to the question of the permanency and damages. We thus reverse and remand for a new trial on those issues only.
ANSTEAD, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.
NOTES
[1] Although not raised by appellee, a separate ground for affirmance on this issue may be the waiver of any privilege appellant might have been able to assert by obtaining appellee's experts' reports. See Fla.R.Civ.P. 1.360(b)(2).