IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

June 21, 2017

RING POWER CORPORATION; DIESEL )
CONSTRUCTION COMPANY; and MARK )
DAVID QUANDT, )
                                    )
           Appellants, )
                                    )
v. )        Case No. 2D16-353
                                    )                  2D16-397
GERARDO CONDADO-PEREZ and )
NANCY RODRIGUEZ-VENTURA, )      CONSOLIDATED
                                    )
           Appellees. )
_____ )

BY ORDER OF THE COURT:

Appellants' unopposed motion for rehearing and/or clarification of opinion is granted. Appellees' motion for clarification is granted. The prior opinion dated April 7, 2017, is withdrawn, and the attached opinion is issued in its place. No further motions for rehearing will be entertained.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.

MARY ELIZABETH KUENZEL, CLERK

RING POWER CORPORATION; DIESEL )
CONSTRUCTION COMPANY; and MARK )
DAVID QUANDT, )
)
       Appellants, )
)
v. )     Case No. 2D16-353
)             2D16-397
GERARDO CONDADO-PEREZ and )
NANCY RODRIGUEZ-VENTURA, )
)
       Appellees. )
_____ )

Opinion filed June 21, 2017.

Appeal from the Circuit Court for
Pasco County; Linda H. Babb, Judge.

Carrie Ann Wozniak of Akerman LLP,
Orlando; and Katherine E. Giddings of
Akerman LLP, Tallahassee, for Appellants.

Barbara Green of Barbara Green, P.A.,
Coral Gables; and Betsey T. Herd of
Morgenstern & Herd, P.A., Tampa, for
Appellees.


BLACK, Judge.

         In these consolidated appeals, Ring Power Corporation, Diesel

Construction Company, and Mark David Quandt (collectively, Ring Power) challenge

the judgments entered in favor of Gerardo Condado-Perez (Mr. Condado) and Nancy

Rodriguez-Ventura (Ms. Rodriguez). Ring Power contends that two evidentiary rulings of the trial court were erroneous and contributed to the verdict in favor of Mr. Condado and Ms. Rodriguez. We agree with Ring Power, reverse the final judgments, and remand for a new trial. Because we reverse the final judgments, we also reverse the costs judgments predicated on those judgments.[1]

The underlying negligence action arose out of a motor vehicle accident that occurred on the afternoon of December 8, 2012. While in the course and scope of his employment with Ring Power, Mr. Quandt was driving a large service truck owned by Diesel Construction northbound on I-75 in Pasco County. Mr. Quandt's truck collided with a Ford Expedition driven by Mr. Condado and occupied by Ms. Rodriguez, which was also travelling northbound on I-75. Mr. Quandt's truck then collided with a third vehicle. It was undisputed that there was a mattress in the northbound lanes of the interstate, causing cars to stop or swerve unexpectedly. Further, the parties agreed that there were two northbound lanes of I-75, a median between the north and southbound lanes, and a narrow shoulder adjacent to that median. The agreed-upon facts end there; the parties gave opposing versions of what occurred.

Mr. Condado alleged that he did nothing to contribute to the accident. He claimed that for two or more miles prior to the accident he had been travelling in the left lane. He stated that he saw traffic slowing ahead of him due to someone pulling a mattress out of the roadway and claimed he did not suddenly swerve from the right lane

---

[1]The trial court entered two partial final judgments as to damages—one in favor of Mr. Condado and one in favor of Ms. Rodriguez—and reserved jurisdiction to award fees and costs. Ring Power appealed those judgments. The trial court subsequently entered two costs judgments which were also appealed. This court consolidated the appeals for all purposes.

into the left lane in front of Mr. Quandt's vehicle. Mr. Condado testified that he saw Mr. Quandt's vehicle directly behind him; he alleged that Mr. Quandt was driving too fast and following too closely. When it appeared that Mr. Quandt's vehicle was going to rear-end Mr. Condado's, Mr. Condado steered his vehicle left, into the narrow shoulder. He testified that because of the narrowness of the shoulder, he was unable to completely exit the left lane of the interstate. He further testified that upon steering his vehicle into the left shoulder, the rear of his vehicle was forcefully struck by Mr. Quandt's large service truck, causing Mr. Condado's vehicle to roll over. As a result of the roll over, Mr. Condado and Ms. Rodriguez suffered significant injuries.

Conversely, Mr. Quandt claimed that the accident was caused entirely by Mr. Condado suddenly and unexpectedly swerving from the right lane into the left lane and then into the left shoulder, directly into Mr. Quandt's path of travel. Mr. Quandt testified that the mattress was less than 100 yards away when the traffic in front of him reacted by slowing and stopping. He testified that he was able to reduce his speed significantly and that he attempted to avoid the collision with Mr. Condado's vehicle by moving left into the shoulder and median. But because Mr. Condado swerved further into the median in front of him, the accident was unavoidable.

Each party called an expert witness to advance his respective theory of the case. Mr. Condado called Dr. Elliott Stern, a professional engineer, who concluded that Mr. Quandt caused the accident by driving too fast for the conditions and the surrounding slowing vehicles. Mr. Quandt called Arnold Wheat, an accident investigator certified in traffic reconstruction, who concluded that Mr. Condado's vehicle dramatically

- 3 -

and significantly swerved to the left—into and across Mr. Quandt's path of travel—causing the accident.

The critical evidentiary rulings that Ring Power submits necessitate a new trial both involve an alleged admission by Mr. Condado made to Kyle Paton, a Pasco County Fire Rescue paramedic and emergency medical technician, who arrived on the accident scene shortly after 911 was called. In addition to providing medical assistance to Ms. Rodriguez, Mr. Paton spoke with Mr. Condado about the accident. Based on that conversation, Mr. Paton prepared a mandatory patient care report (EMS Report). The EMS Report provided that "Husband states he swerved to avoid a mattress in the road and lost control of the car and went off the road" (Mr. Condado's statement). Mr. Paton prepared the EMS Report on the day of the accident.

Prior to trial, Mr. Condado filed a motion in limine to prevent the above-quoted statement from being introduced as evidence. Although he stipulated to the authenticity of the EMS Report, he argued that the statement within the EMS Report was not trustworthy because it referred to Mr. Condado as Ms. Rodriguez's "husband," but the two were not married. Mr. Condado also argued that the statement was inadmissible because it lacked a proper foundation; he claimed that he is not a proficient English speaker and denied making the statement at all. Ring Power filed a response to the motion in limine noting that Mr. Condado testified in deposition that he had been married to Ms. Rodriguez for ten years. Ring Power further argued that Mr. Condado's denial of the statement was a matter of weight and credibility for the jury rather than admissibility. Ring Power contended that the statement was admissible as a spontaneous statement, excited utterance, and admission by a party opponent pursuant

to sections 90.803(1), (2), and (18), Florida Statutes (2015). Ring Power also noted that although the statement was hearsay within hearsay, it was admissible because both the EMS Report and Mr. Condado's statement within the report were subject to an exception under section 90.803.

Finding the statement inadmissible through the EMS Report, the trial court granted the motion in limine.[2] At trial, the court denied Ring Power's request to reconsider the ruling on the motion in limine and its request to consider the EMS Report in its entirety as a recorded recollection pursuant to section 90.803(5). The court also excluded from evidence Mr. Paton's deposition testimony, which included a discussion of Mr. Condado's statement and confirmed that Mr. Paton included in his report what he had been told by Mr. Condado at the scene.

In opening statements, Mr. Condado argued that although the defense would suggest that Mr. Condado swerved and caused the accident, the evidence would prove otherwise. At that time, Ring Power renewed its request to use Mr. Condado's statement in the EMS Report based on Mr. Condado's opening statement. The court denied the request.

During trial, Mr. Condado testified that he was very nervous after the accident and thought he was going to die when his vehicle was rolling over. Ring Power again advanced its argument that Mr. Condado's statement in the report was a spontaneous statement or excited utterance and should be admitted. It marked Mr.

---

[2]Initially, the trial court ruled that Mr. Condado's statement could be admitted through the testimony of Mr. Paton but that it could not be admitted through the EMS Report. This appears to be because the trial court believed the EMS Report itself was inadmissible hearsay.

Paton's deposition transcript and video as well as the unredacted EMS Report as exhibits and requested that the court admit them and publish them to the jury. The court declined to reconsider its prior ruling and considered the exhibits as proffers. At that time, Mr. Condado proffered Mr. Paton's deposition cross-examination testimony. The redacted EMS Report was introduced not by Ring Power but by Mr. Condado; it was admitted into evidence without objection. Subsequently, the trial court again declined Ring Power's request to reconsider its prior ruling on the admission of Mr. Condado's statement.

At the close of the evidence, the case was submitted to the jury, which was asked to answer three questions:

> 1. Was there negligence on the part of Mark David Quandt which was a legal cause of injury to [Mr. Condado and Ms. Rodriguez]?
>
> 2. Was there negligence on the part of Gerardo Condado[] which was a contributing legal cause of injury to [Mr. Condado and Ms. Rodriguez]?
>
> 3. Was there negligence on the part of an unknown person responsible for the presence of a mattress on the roadway which was a contributing legal cause of injury to [Mr. Condado and Ms. Rodriguez]?

The jury answered yes to all three questions, and it assigned 65% liability to Mr. Quandt, 33% liability to Mr. Condado, and 2% liability to an unknown person responsible for the mattress in the roadway. The total damages awarded to Ms. Rodriguez were $330,557.65 for past and future medical expenses and $75,000 for pain and suffering; the total damages awarded to Mr. Condado were $193,486.35 for past and future medical expenses and $50,000 for pain and suffering.

Ring Power moved for a new trial, reiterating its prior arguments on the admissibility of Mr. Condado's statement and Mr. Paton's deposition. That motion was denied.

On appeal, Ring Power contends that the trial court abused its discretion in making the evidentiary determinations that Mr. Condado's statement in the EMS Report and Mr. Paton's deposition were inadmissible and that such errors cannot be considered harmless. We agree.

The trial court erred in granting Mr. Condado's motion in limine and in denying Ring Power's repeated requests to introduce Mr. Condado's statement into evidence. That the EMS Report itself was admissible is not contested here; it is only the admissibility of Mr. Condado's statement within that report that is at issue.[3] Notably, the EMS Report was introduced into evidence by Mr. Condado; there was no objection to its admission. Ring Power sought to introduce Mr. Condado's statement within the EMS Report as substantive evidence, contending that the statement met a number of hearsay exceptions. Because we conclude that Mr. Condado's statement was an admission, and therefore admissible pursuant to section 90.803(18)(a), we decline to

---

[3]Ring Power contends that Mr. Condado stipulated to the admission of the EMS Report as a business record under section 90.803(6) by agreeing that a records custodian was unnecessary. See Kelly v. State Farm Mut. Auto. Ins., 720 So. 2d 1145, 1146 (Fla. 5th DCA 1998); Phillips v. Ficarra, 618 So. 2d 312, 313 (Fla. 4th DCA 1993). Mr. Condado disagrees. However, we need not consider any stipulation because the admission of the EMS Report is not at issue on appeal; moreover, Mr. Condado himself introduced the EMS Report into evidence at trial.

address whether it was also a spontaneous statement or excited utterance or could otherwise have been admitted as a recorded recollection.[4]

An admission is "[a] statement that is offered against a party and is . . . [t]he party's own statement in either an individual or a representative capacity." § 90.803(18)(a). That is, the statement need only be (1) a party's and (2) offered against that party to qualify as an admission. Of course, the admission must also be relevant— "tending to prove or disprove a material fact." § 90.401. Statements of a party offered by an opponent regarding causation in negligence actions are generally considered admissions. See McKay v. Perry, 286 So. 2d 262, 263 (Fla. 2d DCA 1973) (stating that party's statement to neighbor regarding ownership of a dog in a dog-bite case would be admissible as an admission); Otis Elevator Co. v. Youngerman, 636 So. 2d 166, 167 n.1 (Fla. 4th DCA 1994) (noting that plaintiff's statement to nurse regarding fall was an admission); Wilkinson v. Grover, 181 So. 2d 591, 593-94 (Fla. 3d DCA 1965) (concluding that plaintiff's statements to physician as to how fast plaintiff was driving at time of accident were admissions). However, the statements of a party need not speak directly to liability to be admissions. See, e.g., Jones v. Alayon, 162 So. 3d 360, 365 (Fla. 4th DCA 2015) (concluding that statement by party regarding how money was spent was an admission). "It is well settled that an admission against interest may be introduced into evidence as substantive evidence of the truth of the matter stated." Seaboard Coast Line R.R. Co. v. Nieuwendaal, 253 So. 2d 451, 452 (Fla. 2d DCA 1971); accord McKay, 286 So. 2d at 263. "This is so even though the person making

_____

[4]See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So. 2d 840, 843-44 (Fla. 1st DCA 2000); Visconti v. Hollywood Rental Serv., 580 So. 2d 197, 198 (Fla. 4th DCA 1991) (Garrett, J., concurring).

- 8 -

the admission against interest subsequently denies making such admission." Seaboard Coast Line, 253 So. 2d at 452; see also Charles W. Ehrhardt, Florida Evidence § 803.18 (2014 ed.) ("If a statement is offered as substantive evidence under [section 90.803(18)] it is not necessary to lay a foundation by asking the individual who made the statement whether he or she did so.").

Here, Ring Power sought to introduce Mr. Condado's statement—attributed to Mr. Condado and included in a properly admitted business medical record—as evidence against Mr. Condado. It clearly meets the statutory requirements of an admission.

Mr. Condado maintains that because he challenged the trustworthiness of the EMS Report and his statement within it, his statement was properly excluded. Provided that medical records, including EMS records, otherwise meet the requirements of a business record under section 90.803(6)(a), their trustworthiness is presumed. Nat'l Union Fire Ins. Co. of Pittsburgh v. Blackmon, 754 So. 2d 840, 842-43 (Fla. 1st DCA 2000) (citing Love v. Garcia, 634 So. 2d 158, 160 (Fla. 1994)). However, the party opposing the introduction of the medical records may rebut that presumption. Love, 634 So. 2d at 160 ("[T]he burden is on the party opposing the introduction to prove the untrustworthiness of the records.").

Here, the EMS Report was introduced into evidence by Mr. Condado; there was no opposition to its admission. Ring Power points out the inconsistency in Mr. Condado's position on his statement within the EMS Report based on his introduction of the report: by introducing the report Mr. Condado conceded the

trustworthiness of the document and yet maintains that a singular statement within it is not trustworthy.

Mr. Condado does not acknowledge that inconsistency or the fact that the EMS Report was appropriately admitted into evidence. Rather, Mr. Condado maintains that his statement is untrustworthy because it refers to Mr. Condado as Ms. Rodriguez's "husband" when in fact Mr. Condado and Ms. Rodriguez are not married and because Mr. Condado is not proficient in English. He also argues that his statement is untrustworthy because the report does not mention that his vehicle rolled over in the accident. As to the former argument, in his deposition and at trial Mr. Condado admitted that he sometimes referred to Ms. Rodriguez as his wife and that he may have done so on the date of the accident.

As to the latter argument, Mr. Condado fails to recognize that his statement is admissible under a hearsay exception separate and distinct from the business record exception; and the admission exception has no trustworthiness component. While hearsay evidence is generally excluded as "inherently untrustworthy because the party against whom such evidence is offered has had no opportunity to test its veracity by cross-examining the statement at the time the statement was made," admissions of a party opponent are an exception to the rule because "a party can hardly complain that he had no opportunity to cross-examine himself at the time the admissions were made." Metropolitan Dade County v. Yearby, 580 So. 2d 186, 188 (Fla. 3d DCA 1991). That is, there is no inherent untrustworthiness in the admission.

Although Mr. Condado's statement was not admissible as a statement for purposes of medical diagnosis or treatment or as part of the business records

- 10 -

exception, see Nat'l Union Fire, 754 So. 2d at 843, it was otherwise admissible as an admission, see State Farm Fire & Cas. Co. v. Higgins, 788 So. 2d 992, 1007-08 (Fla. 4th DCA 2001) ("Ingalls's statements to various physicians were admissible as admissions of a party under section 90.803(18)(a). It was not necessary to also qualify the statements under section 90.803(4), as statements for the purpose of medical diagnosis or treatment."). See also Charles W. Ehrhardt, Florida Evidence § 803.18 (2014 ed.) ("The evidence [meeting the requirements of section 90.803(18) as an admission] is admissible under the exception, and the party who made the out-of-court statement may offer evidence to dispute its truthfulness."). Moreover, any objection Mr. Condado had to the trustworthiness of the document as a whole—including those based on facts absent from the report—was waived by his introduction of the report. Cf. Ohler v. United States, 529 U.S. 753, 755 (2000) ("Generally, a party introducing evidence cannot complain on appeal that the evidence was erroneously admitted."); Dorfman v. Schwabl, 777 So. 2d 427, 429-30 (Fla. 5th DCA 2000) ("We cannot find the court erred, when Dorfman raised the issue about which he now complains.").

It is apparent that the trial court's evidentiary rulings on the admissibility of Mr. Condado's statement were abuses of discretion. However, "[i]n order for an appealing party to be successful in a challenge to a judgment based on 'the improper admission or rejection of evidence,' the appellate court must conclude 'after an examination of the entire case . . . that the error[s] complained of ha[ve] resulted in a miscarriage of justice.' " Fla. Inst. for Neurologic Rehab., Inc. v. Marshall, 943 So. 2d 976, 979 (Fla. 2d DCA 2006) (quoting § 59.041, Fla. Stat. (2006)). The court's determination of whether there has been a miscarriage of justice is based on a

harmless error analysis. Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256-57 (Fla. 2014). "To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." Id. at 1256. Mr. Condado has not established that the exclusion of his statement did not contribute to the verdict. Mr. Condado's statement was admissible, highly relevant, and not unfairly prejudicial. Cf. Opsincs v. State, 185 So. 3d 654, 658-59 (Fla. 4th DCA 2016) (concluding that defendant's statement after accident had little probative value and was highly prejudicial); Kutner v. Dep't of Highway Safety & Motor Vehicles, 568 So. 2d 973, 974 (Fla. 3d DCA 1990) (concluding that exclusion of evidence was proper where its probative value was substantially outweighed by the danger of unfair prejudice given other evidence presented).

The exclusion of Mr. Condado's statement was not harmless. There were two distinct theories advanced about the cause of the accident. Mr. Quandt's defense was that Mr. Condado caused the accident by suddenly swerving. Mr. Condado's statement in the EMS Report expressly corroborated the defense and Mr. Quandt's theory of liability. See Phillips v. Ficarra, 618 So. 2d 312, 314 (Fla. 4th DCA 1993) (concluding that error in excluding medical records was not harmless where records contradicted defendant's theory of the case). Whether Mr. Condado swerved into Mr. Quandt's path or Mr. Quandt was driving too fast and too closely were issues for the jury to decide after weighing the evidence, including Mr. Condado's admission. See Seaboard Coast Line, 253 So. 2d at 452; Wilkinson, 181 So. 2d at 594. Accordingly, Ring Power is entitled to a new trial as to liability.

- 12 -

Although the error in excluding Mr. Condado's statement necessitates a new trial, we briefly comment on the error in excluding Mr. Paton's deposition. The record establishes that Ring Power attempted to introduce and publish Mr. Paton's deposition to the jury; however, it is not clearly established in the record that the trial court ruled on Ring Power's request independent from its fourth request that the unredacted EMS Report be introduced into evidence. We note that Mr. Paton was unavailable at the time of trial and that Florida Rule of Civil Procedure 1.330(a)(1) permits the use of a deposition "for any purpose permitted by the Florida Evidence Code."

The final judgments are reversed. The case is remanded for a new trial in accordance with this opinion.

Reversed and remanded.

KELLY and CRENSHAW, JJ., Concur.